**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**OSCAR COLEMAN, III,**
**DOC # 131647,**

**Plaintiff,**

**vs.** **Case No. 1:25cv268-TKW-MAF**

**OFFICER PEIRSON, et al.,**

**Defendants.**
**_______________________________/**

## REPORT AND RECOMMENDATION

Pending before the Court are two motions to dismiss Plaintiff's second amended complaint, ECF No. 16. Defendants Adam Stewart and Zoey D. Pierson filed a motion to dismiss with prejudice, ECF No. 62, arguing that Plaintiff fails to state an Eighth Amendment claim, that alleged violations of institutional rules do not establish constitutional liability, that they are entitled to qualified immunity, and that Plaintiff's request for injunctive relief is moot. Defendant Officer Van Houten filed a separate motion to dismiss, ECF No. 63, arguing that Plaintiff failed to exhaust administrative remedies, that he is entitled to qualified immunity, and that Plaintiff's request for punitive

damages should be dismissed. Plaintiff filed responses in opposition to both motions. ECF Nos. 65-66. The motions are ready for a ruling.[1]

**Allegations of the Second Amendment Complaint, ECF No. 16**

Plaintiff is a convicted state prisoner who was housed at Cross City Correctional Institution at the time of the events at issue in this case. ECF No. 16 at 2-4. He sues Defendants Van Houten, Pierson, and Stewart in their individual capacities. *Id.* at 2-3. Plaintiff alleges that during late May and early June 2025, Van Houten worked as a laundry officer and kept a locker in the laundry room without authorization. *Id.* at 5. When the locker went missing, Van Houten questioned Plaintiff and other inmates concerning the missing property and offered compensation in exchange for information. *Id.*

Plaintiff alleges that Van Houten later called him back to the rear room of the Foxtrot Dorm officer station after questioning another inmate. *Id.* at 5-6. According to Plaintiff, Van Houten stated that he was giving Plaintiff "one more chance" to tell him what he knew about the person who stole the property. *Id.* at 6. Van Houten allegedly stated that if he learned Plaintiff

[1] Plaintiff identifies Defendant Pierson as "Peirson" in the case caption and identifies Defendant Van Houten as "Vanhooten" in the Second Amended Complaint. ECF No. 16. Defendants' filings identify their names as **Zoey D. Pierson** and **Officer Van Houten**. ECF Nos. 62-63. Those spellings are used in the body of this Report and Recommendation while the existing case caption is preserved.

had anything to do with the missing property, or was selling the property, he would have Plaintiff "f***ed up." *Id.* Plaintiff asked Van Houten whether he was threatening him, and Van Houten allegedly responded, *"No, that's not a* f***ing threat, that's a f***ing promise!" *Id.*

Plaintiff went to confinement on an unrelated charge on June 26, 2025. *Id.* He alleges that he was sentenced to sixty days of disciplinary confinement but was released after twenty-one days. *Id.* On July 17, 2025, Plaintiff was transferred to Foxtrot Dorm, cell 3103. *Id.* at 6-7. When Plaintiff arrived, he observed Van Houten speaking with Plaintiff's new cellmate, inmate Cedi Pacheco, and another inmate. *Id.* at 7. Plaintiff alleges that Van Houten walked toward him, smirked, and stated, "I warned you." *Id.* Van Houten then looked in Pacheco's direction and stated, "make it look good." *Id.*

Plaintiff asked Pacheco what Van Houten had been discussing with him. *Id.* Pacheco allegedly told Plaintiff that Van Houten believed Plaintiff and another inmate had stolen his locker. *Id.* Plaintiff alleges that Pacheco thereafter began acting strangely, pacing inside the cell, talking to himself, questioning Plaintiff about whether Plaintiff had robbed Van Houten, and repeatedly pointing at Plaintiff. *Id.* at 7-8. By July 19, 2025, Plaintiff alleges that Pacheco's behavior had worsened. *Id.* at 8. Plaintiff stopped

Defendants Pierson and Stewart together and told them, "I don't feel safe in that cell because my bunky is making threats and hallucinating." *Id.* According to Plaintiff, Pierson and Stewart told him to "get back with them before Master Count." *Id.*

At "recall" (preparing for count), Plaintiff again approached Pierson and reminded her that he feared for his personal safety. *Id.* Plaintiff told Pierson that maybe he should be permitted to be counted outside of the cell. *Id.* According to Plaintiff, Pierson responded that "it's not her call, it's up to her Sergeant." *Id.* Plaintiff then stated that he had a "psychological emergency." *Id.* Pierson asked why, and Plaintiff explained that he feared for his safety if Pacheco backed him into a corner. *Id.* Pierson responded, "wait for Sarge." *Id.*

During master count, Plaintiff alleges that inmate Lindberg Rolle came down the hallway and Plaintiff asked Rolle to tell Pierson that Plaintiff needed to be removed from his cell because Pacheco was pacing with an "obvious knife out." *Id.* Plaintiff alleges that Rolle returned and told him that Pierson said "she's not letting anyone out tonight." *Id.* Plaintiff then asked Rolle to tell Pierson that Plaintiff had a psychological emergency. *Id.* at 8-9. Rolle returned and allegedly told Plaintiff that Pierson said to leave her alone because she was watching a movie. *Id.* at 9. Plaintiff then told Rolle to tell

Stewart when Stewart returned, and Rolle allegedly responded that Stewart was "in the back watching the movie too." *Id.*

Plaintiff alleges that he remained in the cell from approximately 10:00 p.m. until approximately 2:30 a.m. without an officer completing the required thirty-minute security rounds. *Id.* Pierson and Stewart allegedly went home at approximately midnight without addressing Plaintiff's expressed fears or psychological emergency and without completing the security rounds. *Id.* At approximately 2:30 a.m. on July 20, 2025, Pacheco stabbed Plaintiff in the neck and continued attempting to stab him while Plaintiff tried to defend himself. *Id.* at 9-10. Plaintiff alleges that, after he was stabbed in the neck, he was "life flighted" to Shands Hospital. ECF No. 16 at 9. Plaintiff alleges that he suffered muscle, tissue, and nerve damage, as well as injuries affecting the use of his right arm. *Id.* at 10.

On August 20, 2025, Plaintiff alleges that Van Houten came to his cell while conducting a laundry exchange, looked at Plaintiff's neck, and stated, "he made it look good didn't he?" *Id.* Plaintiff claims that Van Houten hired and paid Pacheco to assault him. *Id.* at 11-14.

Plaintiff asserts one Eighth Amendment claim against Van Houten based on his allegation that Van Houten orchestrated an attack against him by another inmate. *Id.* Plaintiff separately asserts Eighth Amendment claims

against Pierson and Stewart based on their alleged failure to protect him from the attack. *Id.* at 12-14. Plaintiff also alleges that Pierson and Stewart violated Department rules and procedures. *Id*. Plaintiff seeks compensatory and punitive damages, injunctive relief requiring officers to conduct security rounds, a jury trial, costs, and other appropriate relief. *Id.* at 14-15.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff must have alleged sufficient facts to state a claim for relief that is plausible on its face. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court accepts the well-pleaded factual allegations as true and construes them in the light most favorable to Plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Although Plaintiff's pro se complaint must be liberally construed, the Court may not rewrite a deficient pleading or supply allegations that Plaintiff did not make. *See* Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014).

The review under Rule 12(b)(6) is generally limited to the allegations within the four corners of the complaint. *See* St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). Thus, additional factual allegations presented for the first time in Plaintiff's responses to the motions are not used to supplement the Second Amended Complaint when determining whether

Page 7 of 21

Plaintiff has stated a claim. That limitation does not apply in the same manner to Van Houten's exhaustion defense because the Eleventh Circuit's procedure for resolving exhaustion requires consideration of the factual allegations presented in the motion and the prisoner's response. *See* Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, but a prisoner is required to exhaust only those administrative remedies that are actually available to him. Ross v. Blake, 578 U.S. 632, 638, 642 (2016). Failure to exhaust is an affirmative defense and is treated as a matter in abatement rather than an adjudication on the merits. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008).

The Eleventh Circuit established a two-step procedure for resolving an exhaustion defense in Turner. First, the Court considers the factual allegations in the motion to dismiss and Plaintiff's response and, if they conflict, accept Plaintiff's version as true. Turner, 541 F.3d at 1082. If the

case is not subject to dismissal at that step, the Court proceeds to make specific findings necessary to resolve disputed factual issues concerning exhaustion. *Id.* The Defendant bears the burden of proving that Plaintiff failed to exhaust available administrative remedies. *Id.*; *see also* Jones v. Bock, 549 U.S. 199, 216 (2007).

**Defendant Van Houten's Exhaustion Defense**

Van Houten argues that Plaintiff failed to exhaust his available administrative remedies before filing this action. In support, Van Houten emphasizes that Plaintiff made "no allegations" in the Second Amended Complaint concerning his efforts to exhaust the prison grievance procedure. However, exhaustion is an affirmative defense, and Plaintiff was not required to specifically plead or demonstrate exhaustion in his complaint. *See* Jones v. Bock, 549 U.S. 199, 216 (2007). Thus, the absence of exhaustion allegations from the Second Amended Complaint does not establish Van Houten's defense.

In his response, Plaintiff disputes Van Houten's assertion that he did not attempt to use the grievance procedure. Plaintiff states that he "utilized the three-step grievance process" but was "hindered from completion" by the Administration's failure to respond, "threats by the Administration to stop writing grievances," and the failure to return informal or formal grievances.

ECF No. 66 at 4. Plaintiff further states that he resorted to the emergency grievance procedure. *Id.*

Under the first step of Turner, where the parties' factual allegations conflict, the Court accepts Plaintiff's version as true. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). Accordingly, the Court accepts for purpose of this step that Plaintiff attempted to use the grievance process and encountered the impediments he describes. The question, however, is whether Plaintiff's own account demonstrates that the remaining administrative remedies were unavailable to him.

It does not. Plaintiff does not identify when he submitted the grievance relating to Van Houten's alleged conduct, what he reported in the grievance, or what occurred at each level of the grievance process. His response likewise does not state that, after the applicable response period expired without a response, he proceeded to the next available step. Under Florida's grievance procedure, the expiration of the response period permits an inmate to proceed to the next step of the grievance process. *See* Fla. Admin. Code r. 33-103.011(4); Pavao v. Sims, 679 F. App'x 819, 825-26 (11th Cir. 2017). Thus, the allegation that prison officials failed to respond or return a grievance does not, by itself, establish that the administrative remedy was unavailable.

Page 10 of 21

Plaintiff has not sufficiently shown that threats rendered the grievance procedure unavailable. A prisoner relying on intimidation must show both that the alleged threat actually deterred him from pursuing the grievance process and that the threat would deter a reasonable inmate of ordinary firmness from doing so. Turner, 541 F.3d at 1085. Once a defendant has shown the existence of an available grievance procedure and the inmate's failure to complete it, the burden of going forward shifts to the inmate to demonstrate that the procedure was subjectively and objectively unavailable. Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020).

Plaintiff states only that there were "threats by the Administration to stop writing grievances." ECF No. 66 at 4. He does not identify who made the threat, what was threatened, when it occurred, or facts showing that the threat actually deterred him from taking an otherwise available step in the grievance process. That general assertion is insufficient to establish that the grievance procedure was subjectively and objectively available.

This case is therefore distinguishable from Watley v. Warden, Ware State Prison, 802 F. 3d 1205 (11th Cir. 2015). There, the prisoner identified the grievance at issue, alleged when he filed it and what it concerned, alleged that he never received a response, later attempted an appeal, and submitted supporting documentation. *Id.* at 1211-13. Here, Plaintiff provides no

comparable factual detail or documentation identifying a grievance concerning Van Houten's alleged conduct.

Similarly, Plaintiff's generalized assertion that he attempted to exhaust but was prevented from doing so is insufficient, without supporting facts, to establish that the administrative process was unavailable. *See* McDowell v. Bowman, No. 21-10840, 2022 WL 4140331, at *4 (11th Cir. Sept. 13, 2022) (requiring a plaintiff who claims he did not receive responses to grievances to provide evidence that he submitted those grievances).

Accordingly, even accepting Plaintiff's version of the facts as true, Plaintiff has not demonstrated that the uncompleted portions of the grievance procedure were unavailable to him. Van Houten's motion should therefore be granted to the extent it seeks dismissal for failure to exhaust administrative remedies. The claim against Van Houten should be dismissed without prejudice.

Because Plaintiff's claim against Van Houten is subject to dismissal for failure to exhaust, the Court need not address Van Houten's remaining arguments concerning the merits of Plaintiff's Eighth Amendment claim, qualified immunity, or damages.

## Eighth Amendment Failure to Protect Claims

The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). To state a failure-to-protect claim, a prisoner must allege an objectively substantial risk of serious harm, deliberate indifference to that risk, and causation. *See* Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019). It has long been established in this Circuit that a prisoner has a constitutional right to reasonable protection from physical assault by another inmate. Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986).

The Eleventh Circuit clarified the deliberate-indifference standard in Wade v. McDade, 106 F.4th 1251 (11th Cir. 2024) (en banc). In addition to an objectively serious deprivation, Plaintiff must show that the Defendant acted with "subjective recklessness as used in the criminal law." *Id.* at 1253, 1262. Thus, the Defendant must actually know that his own act or omission puts Plaintiff at a substantial risk of serious harm. *Id.* A Defendant who actually knows of a substantial risk but responds reasonably to that risk cannot be held liable under the Eighth Amendment. *Id.* at 1262 (citing Farmer, 511 U.S. at 844).

**Defendants Pierson and Stewart**

Pierson and Stewart argue that Plaintiff fails to allege a substantial risk of serious harm, their subjective awareness of such a risk, or a causal connection between their conduct and Plaintiff's injuries. ECF No. 62 at 7-13. They rely, in part, on Carter v. Galloway, 352 F.3d 1346 (11th Cir. 2003), in which the Eleventh Circuit concluded that an inmate's complaints regarding his cellmate's erratic and troublesome behavior did not demonstrate the officials' subjective awareness of a substantial risk that the cellmate would attack him. *Id.* at 1349-50.

The allegations presented here are different. Plaintiff alleges that he approached Pierson and Stewart together and expressly stated, "I don't feel safe in that cell because my bunky is making threats and hallucinating." ECF No. 16 at 8. Thus, Plaintiff did not simply report unusual conduct by Pacheco. He alleges that he identified the inmate with whom he was housed, stated that Pacheco was making threats, and expressly advised both Defendants that he did not feel safe in the cell. *Id.* Pierson and Stewart allegedly told Plaintiff to "get back with them before Master Count." *Id.*

Plaintiff's allegations concerning Pierson are more specific. He alleges that he again advised Pierson that he feared for his safety, suggested that he be permitted to be counted outside the cell, and told Pierson he had a

Page 14 of 21

psychological emergency because of his fear that Pacheco would back him into a corner. *Id.* Plaintiff further alleges that he later sent Rolle to advise Pierson that Pacheco was pacing in the cell with an "obvious knife out," and that Rolle returned and reported that Pierson would not let anyone out that night. *Id.* at 8-9. Accepting those allegations as true, Plaintiff has plausibly alleged that Pierson knew of a specific and substantial risk to Plaintiff's safety and nevertheless declined to take protective action.

The allegations against Stewart are less detailed, but at this stage they are sufficient. Plaintiff alleges that he personally told Stewart that he did not feel safe because Pacheco was making threats and hallucinating, and that Stewart was present when Plaintiff was told to get back with Defendants before master count. *Id.* at 8. Plaintiff later attempted to reach Stewart through Rolle and alleges that Stewart left the institution without addressing Plaintiff's reported safety concern. *Id.* at 9. Construing the complaint liberally and drawing reasonable inferences in Plaintiff's favor, these allegations go beyond a generalized statement that Pacheco was merely difficult or acting strangely and plausibly alleges Stewart's subjective awareness of a specific risk to Plaintiff.

The allegations are closer to those considered in Rodriguez v. Secretary for Department of Corrections, 508 F.3d 611 (11th Cir. 2007), than

those in Carter. In Rodriguez, the Eleventh Circuit distinguished Carter where the prisoner specifically communicated his fear of an attack and sought protection. *Id.* at 619-22. Moreover, the fact that Pacheco's attack occurred more than two hours after Pierson and Stewart allegedly left the institution does not, standing alone, defeat causation. Plaintiff alleges that they were in a position to respond to the reported danger before leaving and that their failure to take protective action left him housed with the inmate who later stabbed him. Whether Plaintiff can prove those allegations is a matter for a developed record, not resolution on a Rule 12(b)(6) motion.

Accordingly, Plaintiff has sufficiently alleged an Eighth Amendment failure-to-protect claim against Pierson and Stewart, and their motion to dismiss those claims should be denied.

**Plaintiff's Psychological Emergency and Institutional Rules**

Pierson and Stewart also argue that Plaintiff fails to state a separate Eighth Amendment claim based on his alleged "psychological emergency." ECF No. 62 at 13-17. The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs, and a serious medical need is one that has been diagnosed by a physician as requiring treatment or is so obvious that even a layperson would recognize the need for medical

attention. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

Plaintiff does not allege that, before the assault, he had been diagnosed with a mental-health condition requiring treatment or that he requested mental-health treatment from Pierson or Stewart. Rather, he alleges that he told Pierson he had a "psychological emergency" because he feared for his safety and believed Pacheco might back him into a corner. ECF No. 16 at 8. Those allegations are relevant to the failure-to-protect claim because they bear on what Plaintiff allegedly communicated to Pierson, but they do not plausibly state a separate claim that Pierson or Stewart denied or delayed treatment for a serious mental-health need. To the extent Plaintiff intended to assert such a separate claim, it should be dismissed for failure to state a claim.

Plaintiff also alleges that Pierson and Stewart failed to comply with rules requiring security rounds and governing psychological emergencies. *Id.* at 12-14. A failure to follow prison procedures does not, by itself, rise to the level of deliberate indifference. Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000). The alleged failure to conduct security rounds may be relevant to the surrounding circumstances and to whether Defendants responded reasonably to a known risk, but violation of the rule itself does not

Page 17 of 21

establish a separate constitutional violation. *See Id.* Accordingly, to the extent Plaintiff seeks to assert an independent § 1983 claim based solely upon violation of prison rules or the Florida Administrative Code, those claims should also be dismissed.

**Qualified Immunity - Pierson and Stewart**

Pierson and Stewart contend that they are entitled to qualified immunity. ECF No. 62 at 19. Qualified immunity protects a government official performing a discretionary function unless the official violates a constitutional right that was clearly established at the time of the challenged conduct. *See* Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

Plaintiff does not dispute that Pierson and Stewart were performing discretionary correctional functions. Accordingly, the Court considers whether Plaintiff has plausibly alleged a constitutional violation and, if so, whether the right was clearly established at the time of the alleged conduct.

First, the Second Amended Complaint plausibly alleges that Pierson and Stewart violated Plaintiff's Eighth Amendment rights. Plaintiff alleges that he informed Pierson and Stewart that Pacheco was threatening him, that Pacheco had an obvious knife, and that Plaintiff feared for his safety, yet Pierson and Stewart failed to take reasonable measures to protect him. Accepting those allegations as true, Plaintiff has plausibly alleged that

Page 18 of 21

Pierson and Stewart knew of and disregarded a substantial risk of serious harm.

Second, the right was clearly established at the time of the alleged conduct. As explained above, Plaintiff has plausibly alleged that Pierson and Stewart knew he faced a substantial risk of violence from the inmate housed in his cell and failed to take reasonable protective measures. The duty of prison officials not to consciously disregard a known substantial risk of serious inmate-on-inmate violence was clearly established well before July 2025. *See* Farmer, 511 U.S. at 833, 837; Rodriguez, 508 F.3d at 617-23; Zatler, 802 F.2d at 400. Plaintiff's allegations, if proven, therefore state the violation of a clearly established right.

The evidence may ultimately show that either Defendant lacked the required subjective knowledge, that the information communicated to the Defendant was materially different from Plaintiff's allegations, or that the Defendant responded reasonably to the information received. Those factual matters cannot be resolved against Plaintiff from the face of the Second Amended Complaint. Accordingly, Pierson and Stewart are not entitled to dismissal of the failure-to-protect claims on qualified-immunity grounds at this stage.

**Injunctive Relief**

Pierson and Stewart argue that Plaintiff's request for injunctive relief is moot because Plaintiff is no longer housed at Cross City Correctional Institution. ECF No. 62 at 19-20. Plaintiff seeks an injunction requiring correctional officers to conduct security rounds, ECF No. 16 at 15, but the record reflects that Plaintiff has since been transferred to Suwannee Correctional Institution. Plaintiff acknowledges his transfer but argues that he could eventually be returned to Cross City. ECF No. 65.

The general rule in the Eleventh Circuit is that a prisoner's transfer from the institution about which he complains moots his individual claims for prospective declaratory and injunctive relief. McKinnon v. Talladega Cnty., 745 F.2d 1360, 1363 (11th Cir. 1984); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985). Plaintiff's suggestion that he might someday be returned to Cross City is insufficient to establish a present controversy concerning conditions there. Accordingly, Plaintiff's request for injunctive relief should be dismissed as moot. His transfer does not moot his claims for monetary damages arising from the alleged past violations.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Defendants Stewart and Pierson's motion to dismiss, ECF No. 62, be **DENIED** as to Plaintiff's Eighth Amendment failure-to-protect claims against Defendants Pierson and Stewart and their assertion of the affirmative defense of qualified immunity to those claims, but that the motion be **GRANTED** as to the Plaintiff's separate Eighth Amendment claim against Pierson and Stewart for deliberate indifference to a serious mental health need, Plaintiff's independent constitutional claims based solely on alleged violations of prison rules or the Florida Administrative Code, and Plaintiff's request for injunctive relief; and that Defendant Van Houten's motion to dismiss, ECF No. 63, be **GRANTED** based on Plaintiff's failure to exhaust administrative remedies. It is further **RECOMMENDED** that Defendants Pierson and Stewart be required to file an answer to the Second Amended Complaint and that the case be remanded to the undersigned for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on October 8, 2026.

S/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**